Fourth case of the day is Overwell Harvest v. Trading Technologies, appeal number 23-2150. Miss Rakowski, whenever you're ready. Good morning, may it please the court. The fundamental issue in this case is whether Overwell Harvest was entitled to a jury trial on its claim of aiding and abetting a breach of fiduciary duty when it sought not only the traditional remedy of discouragement but also compensatory remedies. Miss Rakowski, can I ask you, will you make sure to address the harmless error issues? I actually don't think that's the fundamental issue in this case. I think the fundamental issue is whether denying Overwell Harvest was an error, was harmless error. In other words, what I'm specifically interested in is what is your best evidence that was presented at trial that trading technologies did anything under Delaware law to aid and abet a breach of fiduciary duty by the individuals? Because I don't want to rewrite Delaware law in this case, okay? And it just looks to me like business and hard-nosed negotiation by trading technologies and not in aiding and abetting of any breach of fiduciary duty. So specifically address Delaware law and where we should look. Yes. In terms of harmless error, I think part of what the issue is here is there were several material issues of fact. And I'd like to start by noting that trading technologies brought a motion for summary judgment in this case and then brought a motion for reconsideration of the denial of that motion. The district court judge found twice that— No doubt, but then there was a trial, so you got to put in all your evidence at trial. But what is the evidence—forget what the district judge did at summary judgment, it's not relevant to us because there was a trial. So what evidence is there that trading technologies did anything to aid and abet the breach of fiduciary duties by certain individuals under Delaware law? Yes. Starting with—we presented multiple theories of breach here. Starting with the breach relating to confidential information, the court credited evidence that an employee of Norenzic, J. Biondo, went to—after leaving Norenzic, went to work for trading technologies and— Is this after the TRO was in place? Yes. Okay. Yes, this is. So J. Biondo testified that while he was at trading technologies, he was actively maintaining the appearance that he was an employee of Norenzic working on Norenzic customers, and he testified that he had been instructed to do this by David Wederhorn, and there had been discussions. Get to the point where trading technologies plays a role here because, again, so much of the briefs is focused on what these individuals did to breach their fiduciary duties, and maybe they did or maybe they didn't, but what's missing is what trading technologies did under Delaware law to aid and abet because we can't rewrite Delaware law. I mean, boy, if we wrote this opinion that you want us to write in this case, I mean, it would be hard to say that just negotiation or hiring competitors does not violate Delaware law. That's correct. I think here the issue is not that they were hiring a competitor, but that after the competitor arrived, the competitor was using Norenzic's confidential information in service. But how is that aiding and abetting a breach of fiduciary duty by the individuals? I mean, you're just saying bad facts, but bad facts have to meet the elements of aiding and abetting a breach of fiduciary duty. Yes. I wanted to set forth the basis for it because trading technologies was aware of this. Trading technologies participated by essentially they knew what he was doing. They knew that he was using Norenzic confidential information. They knew that he was servicing Norenzic customers as an employee of trading technologies. There were discussions about what he was doing, and they were aware of all this. And I would like to make the point, too, that under Delaware law, confidentiality is taken very seriously to the extent that it has been held that even if the competitor who hired the employee was not necessarily aware that they were sharing information, which is not the case here. They were aware. But even if they were not aware they were sharing the information, if they failed to take any steps to prevent the sharing of that information— But in several places the district court presented or stated that there's no evidence in support of your claims. Respectfully, my position is that the district court was not necessarily correct in some of those instances. So for example, to address an issue that the district court discussed in terms of causation and damages, the district court made the statement that there was no evidence that after trading technologies raised its bid that either Overwell or trading technologies would have bid any higher for the technology at issue in this case. That was not correct. Overwell presented evidence—and I'll get to trading technologies in just a second as well—Overwell presented undisputed evidence that it was prepared to bid up to $1.5 million for an forensic. Overwell also testified, and the district court concluded, testified credibly that Overwell was prepared to negotiate any of the issues in the contract. So whether it pertained to exclusivity, timing, they were prepared to negotiate on all of these issues. As to trading technologies— You're into your rebuttal time. I just want to let you know. So— Thank you. You're welcome. I'll finish this— You can do whatever you want, but— I'll finish this point and then reserve the remainder. As for trading technologies, two things. One, trading technologies' chief technological officer testified that it would have taken trading technologies—it would have cost at least $1 million to replicate the technology that Norenzic possessed. They ended up buying it for $400,000. Now trading technologies also testified at trial, and the district court agreed with us that it still would not have bid further had Norenzic gone back to Overwell and asked for another bid. However, that had happened before. At the injunction stage, trading technologies submitted an affidavit saying that if the district court entered the injunction to provide additional time, that it would not bid further. But yet it came back and did, and I think the reason is because of the value of that technology. Thank you. I'd like to reserve the remainder of my time. Certainly. Mr. Doyle. Thank you very much. May it please the Court. David Doyle on behalf of defendant and appellee trading technologies. I'm pleased that the Court began with the question of harmless air. I think it is a critical issue here. We had a situation at trial where the proof was so deficient that we finished the presentation of evidence, took a week off before summations, and a completely new, never-before-argued theory was advanced and made the entire focus of Overwell's closing argument. They argued that there was some failure on the part of Weerhorn and DeGiudice to provide proper notice under Delaware law, under Section 271. That was not in their complaint. It was not mentioned in years of discovery. Judge Ellis found that was waived, right? Judge Ellis found that was waived. That was absolutely the correct decision. I would point out, and I appreciate that you've read the briefs, we took this step going into the trial, and Judge Ellis ordered that Overwell delineate, make a list of the fiduciary duty breaches that were going to be the subject of the trial, so that I wouldn't have a moving target, so we'd know what this case was about. There was no mention of Section 271. So that argument was waived, clearly. So let's move to the next one. What information, I guess, if Overwell's claim, I am trying to go back to the argument that was presented to us again, was whether or not they were entitled to a jury. Correct. And so, I guess my question is, if it was compensatory and punitive, and not the disgorgement, would you contend that they were entitled to a jury? Well, I can answer the question this way. I think we would have proceeded to a jury trial, had they not forcefully asserted their intention to seek disgorgement at trial. That was a game changer. Counsel, they're not just seeking disgorgement. I mean, you moved to strike the punitive damages, you lost, punitive damages are still going, and in all fairness to Judge Ellis here, kind of at the last minute, she's told, eh, I don't think there should be a jury trial, and this is, it's a complicated question, and you're still seeking punitive damages, you're not, it's not just disgorgement. True. But they also sought $1.4 million in attorneys fees, which is equitable. So what Judge Ellis had was a situation, and to frame the issue, it's important. This is one claim, right? It's a one-count aiding-abetting breach of fiduciary theory, so you have to decide as a judge, is this going to be a bench trial or a jury trial? And you start under the Supreme Court test with the premise, what would have happened prior to 1791? And even in that first step, was there ever aiding and abetting in equity? I don't know that I can answer that question, going back to the 1700s, I know that every court that I'm aware of that has looked at this issue has combined aiding and abetting with breach of fiduciary duty, and said when at its heart this is a breach of fiduciary duty claim, even if it's derivative aiding and abetting, that is at its core a claim in equity. It would have been brought to a court of equity in England. Wouldn't it at least have made that first step a mixed question, and then even without that, the second step's controlling, and you've got punitive damages? I don't think at all. I don't think it's a mixed question. I think some of the cases that we cited, there were both breach of fiduciary duty theories and aiding and abetting breach of fiduciary duty theories. And Your Honor, Overwell hasn't argued this. Overwell conceded it's inarguable that this claim is equitable at its core. And then the only question is, when you go to the second prong, under Grand Financiera, does that change the inquiry? And it doesn't. And I think there's two major failings in the position that Overwell wants this court to take. And I recognize that it's an issue of first impression for the court. One, they want the court to completely ignore the first prong of the test. They didn't argue that it's inequitpoised or that it's mixed. That prong is in favor of a bench trial, and they want you to ignore it because the Supreme Court has said the second prong is more important. But you have to look at how that law evolved. All of the cases where it said that were cases involving statutory claims, Curtis, Tall, Grand Financiera. And when you have a statute like the Clean Water Act, that wasn't around in England. So you have to figure out how would it have been treated or presented more than 200 years ago. And that's a murky question oftentimes. So what, and I think that's why the Supreme Court has placed greater emphasis on the second prong of the test. Take Tall quickly. But the nature of the relief in that second prong, are they, going back to the question, was overall requesting legal damages as well as equitable damages or only equitable? What overall is intending to do at trial is seek compensatory damages. I think under the theory that the purchase price for the assets should have been higher. And punitive damages. Both are legal remedies. And disgorgement of profits from trading technologies for their use of the assets. That is a decidedly equitable remedy. Which ultimately decided there were none, right? I'm sorry? That there weren't enough profits for disgorgement. There weren't, but how does Judge Ellis know that? When she's asked, I mean, they're using what happened at trial to justify a decision that the court had to make prior to the trial about how the trial would be conducted. That's not fair. I think you're going to go on with Judge Breyer's answer. Sorry. So in Tall versus the United States, we had a situation on the Clean Water Act. Somebody was polluting protected wetlands in Virginia. And the government sought $22 million in civil penalties. And the government didn't want a jury trial. And what the government said was, well, this is in the nature of a nuisance claim. And the damages I'm seeking are akin to disgorgement. The court said, no. You're seeking civil penalties. There's a long history of people bringing cases for civil penalties, including prior to the merger of courts of law and equity in the 1700s. So this is a legal claim. But we understand that there's not always this precise analog to a common law claim when a statutory cause of action is being pursued. So we're going to look more importantly at the nature of the relief that's being sought. I would submit to you in a case like this one, I'm not convinced that the court would place that same emphasis on the second factor, because you have a case where the first prong is so decidedly determined in favor of a bench trial. Now you have to decide, OK, what do I do? And what many courts, three judges in this building, a federal judge in Delaware, have decided when faced with this precise issue, a singular claim for breach of fiduciary duty or aiding and abetting, and mixed relief, they have decided that you have to, basically, the scale tilts to equitable. And we know that that's the holding. And that's what Judge Ellis relied on, the holding that when it's mixed, that you lean toward using or giving a bench trial under the Seventh Amendment. But we have the First Circuit. We have the Sixth Circuit and the Eighth Circuit that have all addressed this issue when there is a single claim of equitable, a nature equitable claim. And then you have this mixed request of the nature of relief that whenever there's legal relief mixed in, regardless of how the scales weigh out, and I'm using language from the Eighth Circuit case in 2021, they also found that those issues regarding the legal remedies, those go to a jury. And so, are you requesting that we split from the First, the Sixth, and the Eighth? I'd have to look at those cases precisely, but I think the confusion may be, or at least maybe the disconnect may be, maybe not confusion. But when you have a case with multiple claims, some legal and some equitable, it is common to parse out the legal and equitable forms of relief and theories and try some to the jury and some to the bench. I've had cases like that. I've had cases where we tried the whole case to a jury, but it was tried on an advisory basis on the equitable claims, and then the judge made those determinations. And I think maybe those cases are involving those scenarios. So let me read the line from Golden from the Sixth Circuit. It said, once a court determines that a case involves legal issues, the litigants have a right to jury trial on those issues. And so, we're agreeing that here we have an equitable claim, okay? And so, the equitable claim has now a mixed bag of legal and equitable remedies. So, the Eighth Circuit said in that instance, when it's paired with a requested remedy that has both, that the requested relief for equity table that, but we send the rest of it to a jury. So, I don't believe it's a confusion as far as how those cases are sparsing them out, but I wanted to get your take on it. I appreciate it, Judge. And I know I'm out of time if you'll indulge me. I confess to you that I'm not recalling the specific facts that I gave you. That's fine. But I do think it cannot be the law that when you have a case that involves legal claims and equitable claims, you're going to impanel a jury in every instance and you're going to try the legal claims to a jury and the equitable claims to the court. We'd have a jury in every case. And that's not consistent with Grand Financiera and the two-pronged test. The two-pronged test says, we want you to give some deference to the history. And breach of fiduciary duty cases are historically equitable. And when you have that and you have meaningful equitable and legal relief that's sought, and you have to decide, I have one claim. It's for aiding and abetting breach of fiduciary duty. And there was no aiding and abetting proven, to Judge Kirsch's point. I don't know how and I don't have the time to go into it. But there was no breach by the directors and there certainly was nothing tying it to training technologies. But when you have that one singular claim, I think Prim got it right. Judge Ellis got it right. The Cantor case in Delaware got it right. A couple other cases decided by judges in this building, got it right. That is a case that needs to be tried to the bench because it's equitable at its core. So for that reason, your honors, we would ask that the court confirm the sound decision of the district court below. Thank you, Mr. Doyle. Mr. Rakowski, you're about. Thank you. I'd like to return to the issue of harmless error. Trading technologies participated in this breach in multiple ways. One of the most significant was that essentially trading technologies participated in acquiring everything valuable that Norenzic had basically before the sale. This left nothing left to sell. If Had Overwell had the winning bid, they would have had to go over to trading technologies to get the employees who were sitting there working on Norenzic software. This put Norenzic in a position that they were forced to sell to trading technologies. They had already transferred everything over. The other point I'd like to make in that area is that in terms of, yes, there was hard negotiation. But here you have a situation where trading technologies conditioned its offer for more money on closing in five days, essentially cutting off the competitive bidding process, not allowing it to go further. They were, and in addition, that creates a problem under Delaware law with Section 271 because the shareholders need that additional time to evaluate the terms of the sale. So trading technologies didn't just make that offer, let the competitive bidding process bear out. It said, no, we'll give you more money if you close right away. Essentially, we want this done. We've already got everything over here anyway. Let's move along. And I think that's why this takes trading technologies out of the sphere of just a competitor and puts them in a position where they were kind of in the same boat. They were operating on the same side. This was already done. They were trying to make sure that it got completed. I see my time is up. I respectfully request that this court reverse and remand to the district court for a new trial. Thank you, Ms. Rehowski. Thank you, counsel. The case will be taken under advisement. Our fifth case of the day.